The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
STIPULATIONS
The Full Commission finds as fact and concludes as matters of law all stipulations found in the Pre-Trial Agreement of the parties. Said Pre-Trial Agreement is incorporated herein by reference.
The Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications and finds as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed 50 year old widower, who has been receiving Social Security Disability benefits since May of 1993. He is a high school graduate and also took one year of courses in Industrial Maintenance and Management at Edgecombe Community College.
2. Plaintiff has been employed a total of seventeen years by defendant-employer and he last worked there as a beam and pipe fitter during the ten year period from 1983 to 1993; however, because of the back and hip injuries giving rise hereto he is no longer capable of returning to his regular beam and pipe fitters job; but rather, is only capable of sedentary work that does not involve lifting objects greater than thirty pounds or walking on level surfaces for more than three to four hours without rest, or the ability to squat, work in awkward positions, bending, twisting or frequent stair climbing. There is no evidence that this type of work is available for someone of plaintiff's age, education, background and work experience having these physical limitations and suffering from the level of chronic incapacitating pain he does.
3. In 1972 plaintiff suffered a dislocated left hip in an automobile accident not only then requiring him to undergo corrective surgery to remove a fracture fragment from his hip joint, which was performed by Dr. A. Tyson Jennette, a Wilson orthopedic surgeon, but ten years later Dr. Jennette replaced the same hip joint because of arthritis and probable avascular necrosis that plaintiff had developed in it. Although such hip replacements ordinarily last some ten to fifteen years before requiring replacement and he would himself have required one at some indeterminate point in the future; plaintiff did very well following his original hip replacement surgery and did not return to Dr. Jennette for seven years. When plaintiff did return in June of 1989 it was because he had sustained an acute low back strain after lifting some heavy objects at work two weeks earlier manifested by low back and left sacroiliac pain rather than being due to any hip problems associated with his earlier hip replacement. Dr. Jennette not only provided a conservative course of treatment consisting of various medications, an injection to the tender left sacroiliac area and bed rest, but scheduled him to return for follow-up a week later. When plaintiff came back to Dr. Jennette's office a week later and was seen by Dr. Jennette's nurse in his absence, he was doing well. He did not return to Dr. Jennette's office until February of 1992 and was complaining of occasional pain in the hip as well as other arthralgias. Dr. Jennette injected the affected hip joint and scheduled him to return for re-evaluation a year later. At that time x-rays did not show loosening of plaintiff's hip replacement and he was walking well and did not require another replacement. Upon seeing plaintiff for re-evaluation a year later Dr. Jennette again injected his left hip and as far as his hip was concerned plaintiff was doing quite well, but did have a lot of generalized joint complaints. Again Dr. Jennette scheduled him to return a year later for re-evaluation.
4. Although prior to May of 1993 not only had plaintiff's original left hip replacement begun loosening gradually from normal wear and tear, including as part thereof the fact that plaintiff was involved in physical labor, and at some indeterminate point in the future would have needed replacement, and he had experienced occasional pain in the same joint as well as a lot of other arthralgias; however plaintiff did not require another total hip replacement nor was his associated pain incapacitating. He had been able to continue regularly working despite his pain.
5. Although plaintiff had injured his back in June of 1989 and had developed degenerative disc disease in his lumbosacral spine prior to May of 1993; he had recovered from the same back injury and his degenerative disc disease was neither incapacitating nor required corrective surgery prior to May of 1993. Despite his back problems plaintiff had been able to continue regularly working for defendant-employer.
6. On or about a date certain as part of his duly assigned ordinary employment duties as one of the premises beam and pipe fitters approximately a week prior to May 25, 1993 plaintiff was involved in working on a large beam, which weighed in the five hundred pound range and had been laid across two work bucks. Because the stationary boom was inoperable and the overhead crane was unavailable, plaintiff attempted to pick up one end of the beam and pull it up to a sitting up position. In so doing he not only experienced an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, but a specific traumatic incident resulting in the disabling, and otherwise compensable, back injury giving rise hereto, which materially aggravated plaintiff's existing, but then non-incapacitating degenerative disc disease thereby proximately contributing to his ultimate disability as well as the corrective back surgeries he was twice required to undergo.
7. On May 25, 1993 plaintiff sought medical treatment for his resulting back and left hip pain from Dr. Jennette, who scheduled him for a CAT scan, which only showed a minimal central protrusion of the disc at the L-4, L-5 level, and upon plaintiff's return three days later, re-injected his left sacroiliac area. Despite his back injury plaintiff was subsequently able to return to unrestricted work for defendant-employer after only several days out of work and he took vacation time for the days missed resulting in him continuing to receive his full salary.
8. On June 17, 1993 as part of his duly assigned ordinary employment duties as one of the premises beam and pipe fitters plaintiff was involved in attempting to lift a twelve by twelve one inch thick steel pad weighing in the thirty pound range and in the process thereof experienced a specific traumatic incident resulting in another disabling, and otherwise compensable, back injury manifested by recurrence of his back pain, which materially aggravated plaintiff's existing, but then non-incapacitating, degenerative disc disease and proximately contributing to his ultimate disability as well as to the corrective back surgeries he was twice required to undergo thereafter.
9. Plaintiff already had a scheduled appointment with Dr. Jennette that same afternoon to re-evaluate his earlier back injury. Because of the sciatic-type pain he was continuing to experience Dr. Jennette re-injected his left sacroiliac area and scheduled him to return in two weeks. On June 17, 1993 plaintiff had good hip motion without pain. Plaintiff returned to Dr. Jennette four days later complaining of pain in his lumbar area, without associated hip pain. Dr. Jennette's prescribed a lumbosacral corset and scheduled him to return for his regular appointment two weeks following June 17, 1993.
10. Rather than returning to Dr. Jennette, however, two days later plaintiff sought treatment from Dr. Lucas J. Martinez, a Rocky Mount neurosurgeon, who not only provided him additional medications, but scheduled him for physical therapy as well as contemplated obtaining a myelogram if his condition did not improve with physical therapy. Ultimately with treatment, including the epidural injection he underwent, plaintiff's condition improved enabling him to return to unrestricted work for defendant-employer on about August 18, 1993.
11. Although Dr. Martinez had released plaintiff to return to work as of August 13, 1993 defendant-employer would not initially allow him to return to work until he had obtained a specific written statement from Dr. Martinez indicating he could return to work and as a result plaintiff did not ultimately return to work until August 18, 1993.
12. During the period he was out of work from June 17, 1993 to August 18, 1993 as a result of his June 17, 1993 back injury, plaintiff received $150.00 a week in benefits under a non-contributory group disability insurance plan that defendant-employer provided for its workers, which were not due and payable under the Workers' Compensation Act because of defendant-employer's denial of the involved claim entitling it to a credit pursuant to the provisions of G.S. 97-42.
13. Plaintiff was subsequently able to resume unrestricted work and to continue regularly working until August 27, 1993. At approximately 5:30 a.m. on the same date, as he was going to work on the premises, plaintiff tripped over a block of wood on the floor and stumbled forward not only resulting in an interruption of his normal routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, but also constituted a specific traumatic incident resulting in another disabling, and otherwise compensable, back injury. This injury along with his earlier two back injuries, materially aggravated and/or accelerated plaintiff's existing, but then non-incapacitating, degenerative disc disease and thereby proximately contributed to his ultimate disability and subsequent need for surgery. This injury also materially aggravated plaintiff`s left hip condition and proximately contributed to his need for left hip replacement.
14. On September 3, 1993 plaintiff returned to Dr. Martinez and because of his worsened left hip problems was thereby referred to Duke University Medical Center to evaluate those problems and came under the care of Dr. Thomas P. Vail, who on or about November 5, 1995 replaced his left hip. Although, as previously stated, plaintiff's left hip was probably already beginning to loosen from normal wear and tear, including as part thereof the fact he was involved in physical labor and would likely have required a hip replacement at some indeterminate time in the future, prior to his August 28, 1993 left hip re-injury or aggravation when he stumbled forward over the block of wood at work, he had not needed to undergo a total hip replacement.
15. Plaintiff has since reached maximum medical improvement and/or the end of the healing period from and following his left hip replacement and because of it is unable to return to his regular job as a beam and pipe fitter; but rather, only to sedentary work within the limitations described in Findings of Fact No. Two hereinabove described.
16. After recovering from his left hip replacement plaintiff sought further medical treatment for his continuing back problems. Since the time he had last been evaluated for those back problems by Dr. Martinez, plaintiff's group insurance carrier had changed and as a result the new carrier's rules required him to initially be seen by his primary care physician, Dr. Mitchell, and that physician would then refer him to one of the carrier's approved specialists, who happened to be Dr. David C. Miller, a Rocky Mount orthopedic surgeon. Because of the disabling symptoms that he had developed as a result of the above-described three back injuries giving rise hereto, which materially aggravated and/or accelerated his existing, but then non-incapacitating, degenerative disc disease thereby proximately contributing to his ultimate disability, Dr. Miller has twice since performed corrective back surgery for the disabling disc injury sustained, initially involving a fusion with hardware, followed by removal of the hardware and refusion.
17. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following the back injuries giving rise hereto and corrective surgeries necessitated thereby on or about December 29, 1995, at which time he retained a twenty percent permanent partial disability of the back. Because of his permanent back injury he is limited to the same type of sedentary work as is required due to his left hip replacement resulting in plaintiff having remained totally incapacitated since August 30, 1993 when he was ultimately forced to stop working after the back and hip injuries sustained on August 27, 1993.
18. For a period of six months following August 30, 1993 plaintiff continued to receive $150.00 a week in benefits under a non-contributory group disability insurance plan defendant-employer provided for its employees. Defendant is entitled to a credit offset against the instant Award of continuing disability benefits pursuant to the provisions of G.S. 97-42.1.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On or about May 18, 1993, June 17, 1993 and August 27, 1993 plaintiff sustained injuries by accident arising out of and in the course of his employment resulting in back injuries, which materially aggravated and/or accelerated his existing, but then non-incapacitating, degenerative disc disease in his lumbar spine thereby proximately contributing to his ultimate disability as well as requiring him to twice undergo corrective back surgery for his resulting disc injury. N.C.G.S. § 97-2(6).
2. By December 29, 1995 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following his May 18, 1993, June 17, 1993 and August 27, 1993 back injuries and corrective surgeries necessitated thereby, at which time he retained a twenty percent permanent partial disability of the back. N.C.G.S. § 97-29, 97-31.
3. As a result of the August 27, 1993 injury by accident giving rise hereto plaintiff also injured his left hip, which materially aggravated his existing, but then non-incapacitating left hip condition and not only proximately contributed to his ultimate disability, but required him to undergo another total hip replacement. Plaintiff has since also reached maximum medical improvement from and following his total hip replacement.
4. As a result of his June 17, 1993 back injury plaintiff was temporarily totally disabled from June 17, 1993 to August 18, 1993 entitling him to compensation at the lawful rate, subject to a credit for the $150.00 a week in benefits that defendant-employer paid plaintiff during this same period under the non-contributory group disability insurance plan that it provided for its workers, which were not due and payable under the Workers' Compensation Act because of defendant-employer's denial of the involved claim. N.C.G.S. § 97-29 and 97-42.1.
5. As a result of the injuries by accident giving rise hereto plaintiff has remained totally incapacitated from working since August 30, 1993 entitling him to compensation benefits at the lawful rate from August 30, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a credit for the $150.00 a week in benefits that defendant-employer paid for six months under a non-contributory group disability insurance plan that it provided for its workers, which were not due and payable under the Workers' Compensation Act because of defendant-employer's denial of the same claim entitling it to a credit against the present Award of continuing disability benefits pursuant to the provisions of G.S.97-42.1.
6. To the extent the same are reasonably designed to and tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the hip and back injuries giving rise hereto, including as part thereof the hip and back surgeries he underwent. G.S. 97-25.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of his temporary total disability, compensation at the lawful rate from June 17, 1993 to August 18, 1993, subject to a credit for the $150.00 a week in benefits that defendant-employer paid under a non-contributory group disability insurance plan it provided for its workers, which were not due and payable under the Workers' Compensation Act because of the same employer's denial of the involved claim entitling it to a credit pursuant to the provisions of G.S. 97-42.1.
2. Defendants shall pay plaintiff, on account of his continuing total disability, compensation at the lawful rate from August 30, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains disabled, subject to change of condition, as well as a credit for the $150.00 a week in benefits that defendant-employer paid for six months following August 30, 1993 under the non-contributory group disability insurance plan it provided for its employees, which were not due and payable under the Workers' Compensation Act because of the same employer's denial of the involved claim. Such compensation which has accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
3. A reasonable attorney fee in the amount of twenty-five percent of the net (after credit for the non-contributory disability benefits) compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly to said counsel. For the balance of her fee defendants shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
4. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the hip and back injuries giving rise hereto, including as part thereof the hip and back surgeries he underwent, when bills for the same are submitted in accordance with the Industrial Commission rules.
5. Defendants shall bear the cost, including as part thereof the expert witness fees previously awarded Doctors Miller, Martinez, Jennette and Vail to the extent they have not already been paid.
IT IS FURTHER ORDERED that within thirty hereof defendant-employer shall provide the Industrial Commission a Form 22 wage chart in order that plaintiff's average weekly wage and appropriate compensation rate might be determined, unless the parties are sooner able to stipulate and agree to one. Pending submission of a wage chart defendants shall pay compensation based on the $423.60 average weekly wage shown on its Exhibit No. 2, the Form 19 dated July 6, 1993 regarding plaintiff's June 17, 1993 back injury lifting the twelve by twelve metal plates, which yields a compensation rate of $282.41 per week.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ J. RANDOLPH WARD COMMISSIONER
BSB/cnp/rst 2/7/97